UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
LEO A. MARINO,

               Petitioner,

    -against-

SUPERINTENDENT, Franklin Correctional
Facility,

               Respondent.
--------------------------------------------------------X

**<u>MEMORANDUM & ORDER</u>**
17–CV–1650 (PKC)

PAMELA K. CHEN, United States District Judge:

       Leo A. Marino ("Petitioner"), appearing *pro se*,[1] petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his convictions and aggregate sentence entered in the Supreme Court of the State of New York, Queens County. For the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

       Over a two-week period in August 2011, Petitioner stole or attempted to steal three automobiles off the streets of Howard Beach in Queens County. (State Court Record ("R."), Dkt. 15, at 1606.[2])[3] On August 10, 2011, a police officer caught Petitioner driving a stolen 2008

---

[1] Because Petitioner is *pro se*, the Court liberally construes his petition and interprets it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation and italics omitted). However, the Court notes that it "'need not act as an advocate for'" Petitioner. *Curry v. Kerik*, 163 F. Supp. 2d 232, 235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

[2] All citations to page numbers refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] Because Petitioner has already "been found guilty of the crime[s] charged," the Court will construe the facts "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Chrysler SUV that had been left idling with the keys in the ignition. (R. at 1606.) On August 16, 2011, Petitioner stole a 2010 Honda minivan that was left idling with two children in the back seat. (*Id.* at 1623.) Petitioner made a confession to the police and his DNA was found on an umbrella in the car. (*Id.* at 1616.) On August 23, 2011, Petitioner broke into a 1997 Chevrolet Lumina and fled when confronted by the vehicle's owner. (*Id.* at 1622.) An eyewitness saw Petitioner on the street nearby several hours later and identified Petitioner to the police. (*Id.* at 1616.) In central booking, Petitioner made an inculpatory statement about the incident to members of the District Attorney's office. (*Id.* at 1618–19.)

Based on the three incidents, Petitioner was charged with two counts of Criminal Possession of Stolen Property in the Third Degree, two counts of Criminal Possession of Stolen Property in the Fourth Degree, two counts of Unauthorized Use of a Vehicle in the Third Degree, two counts of Endangering the Welfare of a Child, one count of Grand Larceny in the Fourth Degree, one count of Criminal Mischief in the Third Degree, one count of Attempted Grand Larceny in the Fourth Degree, and one count of Petit Larceny. (*Id.* at 763–64.) Before trial, Petitioner unsuccessfully moved to suppress videotaped statements he made to representatives of the District Attorney's Office. (*Id.* at 764.) Following a jury trial, Petitioner was found guilty, convicted, and sentenced to an aggregate prison term of from nine to 18 years. (*Id.* at 765; Petition for *Habeas Corpus* ("Pet."), Dkt. 1, at 1.) Petitioner was released on March 28, 2017 and is currently on parole.[4]

---

[4] "For challenges to an underlying conviction, courts have found petitioners to be 'in custody' for the purposes of habeas not only when they are incarcerated but also when they are on parole or supervised release." *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 455 n.7 (E.D.N.Y. 2018) (italics omitted). *See Dearstyne v. Mazzuca*, 679 F. App'x 21, 22 n.1 (2d Cir. 2017) (summary order) ("Because [petitioner] is on parole supervision, he is 'in custody' for habeas purposes.").

On direct appeal, the New York Appellate Division, Second Department ("Second Department") modified Petitioner's judgments of conviction. *People v. Marino*, 23 N.Y.S.3d 347 (N.Y. App. Div. 2016). Specifically, the Second Department vacated the convictions for Criminal Mischief in the Third Degree and for Attempted Grand Larceny in the Fourth Degree. *Id.* at 349. Additionally, the court vacated one of the counts for Grand Larceny in the Third Degree as well as one of the counts for Criminal Possession of Stolen Property on which Petitioner was convicted. *Id.* All the other convictions and corresponding sentences were affirmed. *Id.* at 349–50. Petitioner appealed to the New York Court of Appeals, which denied certiorari as well as Petitioner's motion to reconsider. *People v. Marino*, 63 N.E.3d 81 (N.Y. 2016), *reconsideration denied* 68 N.E.3d 110 (N.Y. 2016). Petitioner thereafter commenced this timely *habeas* action. (Pet. at 1.) *See Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 29 (2d Cir. 2015) (noting the "one-year deadline for filing a petition for habeas corpus").

## STANDARD OF REVIEW

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (quotations omitted). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be

rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see id.* at 301–02 (explaining that "the presumption that the federal claim was adjudicated on the merits may be rebutted" by either (1) "the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court *de novo*)"; or (2) "the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)").

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (quotation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in [Supreme Court cases]," or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (quotations omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (quotation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)); *see also Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (observing that where a state court adjudicates a federal constitutional claim on the merits, "we must apply AEDPA deference"). Under this standard, the Court must "assess whether the state court's decision was 'so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Garner v. Lee*, 908 F.3d 845, 861 n.14 (2d Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## DISCUSSION

Rather than articulate the grounds on which he seeks relief in his *habeas* petition, Petitioner simply affixes to his petition the briefs he submitted in his post-conviction filings in the Second Department and refers the Court to those filings (Pet. at 4–5)—the same approach Petitioner adopted before the New York Court of Appeals (R. at 903). The Court will therefore consider each argument made in Petitioner's briefing before the Second Department and deem these arguments properly preserved for consideration before this Court unless specified otherwise. *See Miloro v. Artus*, No. 06-CV-5671, 2009 WL 1146448, at *3 (E.D.N.Y. Apr. 28, 2009) ("[I]f a defendant seeking review by the [New York] Court of Appeals does not specify particular claims but merely attaches the briefs submitted to the Appellate Division, all the claims in those briefs are deemed to have been fairly presented to the Court of Appeals and thus exhausted." (citing *Galdamez v. Keane*, 394 F.3d 68, 76 (2d Cir. 2005)).

## I.    Suppression of Videotape

Petitioner argues that his pre-arraignment videotaped statements should have been suppressed because the remarks Petitioner made before he received the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966), undermined his rights against self-incrimination and to counsel. (Pet. at 27–37.) At the outset, the Court notes that the Second Department partially

agreed with Petitioner and modified his judgment of conviction accordingly. *See Marino*, 23 N.Y.S.3d at 349 ("We agree with the defendant's contention that the hearing court erred in denying that branch of his omnibus motion which was to suppress his videotaped statement to law enforcement officials."). However, the Second Department went on to hold that any error was harmless with respect to Petitioner's convictions for Criminal Possession of Stolen Property in the Third Degree, Unauthorized Use of a Vehicle in the Third Degree, and Endangering the Welfare of a Child. *Id.* at 349–50. Because the Second Department decided this issue on the merits, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121.

The Court concludes that Petitioner's argument that admission of the videotaped statements violated his constitutional rights fails to warrant *habeas* relief. Assuming, *arguendo*, that Petitioner's inculpatory videotaped statements were obtained in violation of *Miranda v. Arizona*,[5] the Court nevertheless concludes that the Second Department did not err in determining that admission of the statements was harmless as to the convictions Petitioner challenges in this Court. On federal *habeas* review of a state-court conviction, the Court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect'

---

[5] The crux of Petitioner's argument is that admission of the videotaped statements violated the Second Department's holding in *People v. Dunbar*, 958 N.Y.S.2d 764 (N.Y. App. Div. 2013), (Pet. at 27–37), which was subsequently affirmed by the New York Court of Appeals. *See People v. Dunbar*, 23 N.E.3d 946 (N.Y. 2014) (holding that a widely administered preamble to *Miranda* warnings undermined subsequently-communicated *Miranda* warnings to the extent that criminal defendants were not adequately and effectively advised of their right against self-incrimination). But on *habeas* review, the relevant inquiry is whether a state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). Thus, a state court's passing on what constitutes a federal constitutional violation is of no moment. *See Portalatin v. Graham*, 624 F.3d 69, 84 (2d Cir. 2010) ("Of course, we do not defer to [the New York Court of Appeals'] interpretation of *federal* law, but we are bound by its construction of *New York* law in conducting our analysis." (emphases in original)).

standard." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). "In assessing whether the erroneous admission of evidence had a substantial and injurious effect on the jury's decision, [the Court] consider[s] the importance of the wrongly admitted evidence, and the overall strength of the prosecution's case." *Wood v. Ercole*, 644 F.3d 83, 94 (2d Cir. 2011) (quotation, brackets, and ellipsis omitted).

As the Supreme Court has advised, "granting habeas relief merely because there is a reasonable possibility that trial error contributed to the verdict is at odds with the historic meaning of habeas corpus—to afford relief to those whom society has grievously wronged." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation and citation omitted). On direct appeal, the Second Department observed that there was a substantial amount of evidence besides the videotaped statements supporting Petitioner's convictions for Criminal Possession of Stolen Property in the Third Degree, Unauthorized Use of a Vehicle in the Third Degree, and Endangering the Welfare of a Child. Specifically, the Second Department reasoned:

> [W]ith respect to the charges of criminal possession of stolen property in the third degree and unauthorized use of a vehicle in the third degree under Indictment No. 3143/11, relating to the defendant's possession of a stolen vehicle on August 10, 2011, there is no reasonable possibility that the admission of the videotaped statement may have contributed to the defendant's convictions on those charges. The defendant was apprehended by the police when he was in possession of that vehicle several days after it was stolen. The vehicle was visibly damaged, since its mirrors had been removed. Further, the defendant spontaneously admitted to the police that his use of the vehicle was unauthorized. Similarly, there is no reasonable possibility that the admission of the videotaped statement may have contributed to the defendant's convictions of unauthorized use of a vehicle in the third degree and endangering the welfare of a child (two counts) under Indictment No. 3213/11, relating to his taking of a vehicle on August 16, 2011, with two children inside. In a written statement to the police, the defendant admitted that he took the vehicle, and his presence in the vehicle was established by DNA evidence.

*Id.* at 349–50.

Given this significant quantum of evidence supporting the convictions for Criminal Possession of Stolen Property in the Third Degree, Unauthorized Use of a Vehicle in the Third

Degree, and Endangering the Welfare of a Child, the Court holds that admission of the inculpatory videotaped statements did not have a substantial and injurious effect on the jury's decision in Petitioner's criminal trial. *See Thompson v. Superintendent*, No. 16-CV-1711, 2017 WL 6398743, at *7 (E.D.N.Y. Nov. 21, 2017) (holding admission of testimony was harmless where "the prosecution presented sufficient evidence to convict petitioner" and the challenged testimony "was not the missing link in the government's case" (quotation omitted)); *Winkfield v. Duncan*, No. 12-CV-3237, 2013 WL 597595, at *22 (E.D.N.Y. Feb. 15, 2013) (ruling that the "admission of the confession did not have a substantial and injurious effect on the jury's verdict" where the "confession was corroborated and cumulative rather than being material to the establishment of the critical fact" (quotations and citation omitted)). *Habeas* relief is thus denied on this claim.

## II.     Probable Cause to Arrest

Petitioner argues that the trial court failed to make sufficient factual findings at the suppression hearing, which effectively precluded appellate review of the probable cause for his arrest, and that the state failed to show probable cause for extracting his DNA. (Pet. at 198–201.) These claims are barred by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976), in which the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Id.* at 482. In this Circuit,

> review of fourth amendment claims in habeas petitions would be undertaken only in one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.

*Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

As to the first prong, the Second Circuit has noted that "federal courts have approved New York's procedure for litigating Fourth Amendment claims." *Id.* at 70 n.1 (quotation omitted). Thus, Petitioner's Fourth Amendment claims would only be reviewable under the second prong. "[I]in order to establish an unconscionable breakdown in the process, a petitioner must show that the state courts failed to conduct a reasoned method of inquiry into relevant questions of fact and law." *House v. Miller*, No. 02-CV-5379, 2003 WL 23198788, at *13 (E.D.N.Y. Oct. 27, 2003) (quotations omitted).

In this case, Petitioner had a full opportunity to litigate his Fourth Amendment claims in pre-motion papers and at a suppression hearing. Petitioner's own submissions in this Court describe a pre-trial suppression hearing in which his counsel unsuccessfully moved to suppress evidence against him. (Pet. at 18). And any failure of the state appellate court to specifically consider Petitioner's Fourth Amendment arguments is of no consequence on federal *habeas* review. *See House*, 2003 WL 23198788, at *13 ("An appellate court's summary affirmance, without discussing the Fourth Amendment issue, does not suggest an unconscionable breakdown." (quotation omitted)). The Court therefore concludes that there was no unconscionable breakdown sufficient to overcome the bar to federal *habeas* review established by *Stone*. *See Small v. Artus*, No. 07-CV-1117, 2009 WL 2707319, at *13–14 (E.D.N.Y. Aug. 20, 2009) (holding that petitioner "failed to show . . . an unconscionable breakdown" where "[t]he suppression court entertained briefs concerning the suppression hearing and denied petitioner's request for a hearing only after considering the factual and legal claims asserted by the parties"); *Salcedo v. Smith*, No. 05-CV-3497, 2006 WL 1644700, at *4 (S.D.N.Y. June 13, 2006) ("The petitioner has failed to demonstrate an 'unconscionable breakdown' in the corrective process, showing only that he disagreed with the ultimate outcome of the Fourth Amendment litigation in the state courts.").

### III.    Sufficiency of the Evidence

Petitioner raises several arguments based on sufficiency of the evidence.  Specifically, Petitioner argues that (1) the prosecution failed to establish the fair market value of the stolen vehicles beyond a reasonable doubt (Pet. at 130–37), and (2) the prosecution failed to present evidence establishing that Petitioner knowingly endangered the welfare of a child (*id.* at 234–35). These arguments are procedurally barred.

"A federal habeas court will not review a claim rejected by the state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (quotation and brackets omitted).  On direct appeal, the Second Department held that Petitioner's "challenges to the proof of guilt [we]re unpreserved for appellate review." *Marino*, 23 N.Y.S.3d at 350.  The Second Department based its procedural ruling on New York's "contemporaneous objection rule," which provides that an objection is preserved if the objecting party "(1) made his or her position regarding the ruling known to the trial court; (2) made a protest, and the trial court 'expressly decided the question raised on appeal'; or (3) 'without success . . . either expressly or impliedly sought or requested a particular ruling." *Downs v. Lape*, 657 F.3d 97, 102–03 (2d Cir. 2011) (quoting N.Y. Crim. Proc. L. § 470.05(2)).  (*See* R. at 932 (noting Petitioner's failure to object to criminalist's testimony at trial).)

The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule" and has observed "that the rule constitute[s] an independent ground for disposing of" a petitioner's claim on *habeas* review. *Downs*, 657 F.3d at 104; *see also Garcia v. Lewis*, 188 F.3d 71, 78 (2d Cir. 1999) ("if a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error

because of his failure to comply with a contemporaneous objection rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review" (quotations and brackets omitted)). The Court therefore declines to consider these arguments. *See Torres v. Racette*, No. 11-CV-1647, 2018 WL 4762246, at *4 (E.D.N.Y. Oct. 2, 2018) (holding that "the Court is precluded from reaching the merits of Petitioner's" claims where "Petitioner did not object to the allegedly improper . . . testimony or summation remarks, and, therefore, pursuant to New York Criminal Procedure Law § 470.05(2), both of Petitioner's claims are unpreserved"); *Cromwell v. Smith*, No. 13-CV-29, 2014 WL 1280287, at *9 (S.D.N.Y. Mar. 25, 2014) ("[B]ecause there is no dispute that petitioner failed to object to the evidence [at trial], the contemporaneous objection rule provides an adequate and independent ground to support the Appellate Division's rejection of the petitioner's claims.").[6]

## IV. Suppression of Statements

Petitioner argues that the state court erred in rejecting his contention that certain statements he made at the precinct should have been suppressed. (Pet. at 186–97.) Because the Second Department rejected this claim on the merits, *Marino*, 23 N.Y.S.3d at 350, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121.

The facts underlying this claim are as follows. Before Petitioner was placed in a holding cell, a police officer searched him for weapons and asked Petitioner whether he had anything else on him, to which Petitioner responded that he may have left his pills in the car. (R. at 1003.) Additionally, at trial, a police officer testified that Petitioner said to "[m]ake sure you tell them

---

[6] That the Second Department went on to reject these arguments on the merits, *Marino*, 23 N.Y.S.3d at 350, does not matter. *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is not preserved for appellate review but then rules in any event on the merits, such a claim is procedurally defaulted." (quotations omitted)).

that I had the keys to the vehicle; that it's not GLA.[7]  It's only unauthorized use."  (R. at 996,

1323.)  Petitioner argues that admission of the officer's testimony at trial about Petitioner's

statements violated his Fifth Amendment rights under *Miranda*.  (Pet. at 186–97.)

The Court concludes that Petitioner's argument with respect to the admission of these two

statements at trial does not present a sufficient basis on which this Court can grant *habeas* relief.

Plaintiff's statement that he may have left pills in his car is plainly not inculpatory.  *See Nova v.*

*Bartlett*, 211 F.3d 705, 708 (2d Cir. 2000) (rejecting Fifth Amendment claim on *habeas* review

where "[t]he only statements made by [Petitioner] absent a *Miranda* warning were [] not

incriminating").  As for the testimony indicating that Petitioner told a police officer to "[m]ake

sure you tell them that I had the keys to the vehicle," and that "it's not GLA" and "only

unauthorized use" (R. at 1323), Petitioner has failed to explain how admission of this testimony

was contrary to or an unreasonable application of clearly established Supreme Court precedent.

*See* § 2254(d)(1).[8]  Indeed, given the substantial evidence of Petitioner's guilt with respect to the

grand larceny charge, Petitioner cannot demonstrate that any error in admitting his statements to

the officer at trial resulted in "substantial and injurious effect." *Fry*, 551 U.S. at 121; *see Winkfield*,

---

[7] By "GLA," the police officer understood Petitioner to be using a shorthand term for "grand larceny auto."  (R. at 1323.)

[8] The Court notes that Petitioner's argument is based largely on state court cases (*see* Pet. at 196–97), which are irrelevant on federal *habeas* review.  *See Smith v. Spitzer*, No. 03-CV-3318, 2013 WL 1800207, at *1 (S.D.N.Y. Apr. 29, 2013) ("[A] federal court is not bound by a state court's analysis of federal law.")  To the extent Petitioner cites Supreme Court cases, they are not sufficiently analogous to the circumstances at issue in his criminal trial to be applicable here. *See Haxhia v. Lee*, 637 F. App'x 634, 636 (2d Cir. 2016) (summary order) ("It is not enough that the circumstances of a case are 'similar to' those at issue in the relevant Supreme Court case—they must involve the same specific question."); *White v. West*, No. 04-CV-2886, 2010 WL 5300526, at *14 (E.D.N.Y. Dec. 6, 2016) (rejecting *habeas* petition where "Petitioner has failed to identify clearly established Supreme Court precedent that would vindicate his claim, or show how that precedent was unreasonably applied to his claim of error").

2013 WL 597595, at *22 (holding that "admission of the confession did not have a substantial and injurious effect on the jury's verdict" where the "confession was corroborated and cumulative rather than being material to the establishment of the critical fact" (quotations and citation omitted)); *Thompson*, 2017 WL 6398743, at *7 (holding that admission of testimony was harmless where "the prosecution presented sufficient evidence to convict petitioner" and challenged testimony "was not the missing link in the government's case" (quotation omitted)).

## V. Confrontation Clause Claims

Petitioner argues that (1) the admission at trial of a DNA report without the ability for Petitioner to cross examine the analyst who prepared that report and (2) the trial court's decision to permit the prosecution's expert to testify using the N.A.D.A. Recreational Vehicle Appraiser's Guide ("NADA Guide")[9] both violated Petitioner's rights under the Sixth Amendment's Confrontation Clause. (Pet. at 138–61, 232–33.) Because the Second Department rejected these arguments on the merits, *Marino*, 23 N.Y.S.3d at 350, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121. The Court addresses each contention in turn.

### A. DNA Report

As to the first argument, Petitioner contends that the state violated his rights under the Confrontation Clause by permitting an expert for the prosecution to testify about her independent conclusion that Petitioner's DNA matched the DNA recovered from an umbrella at the scene of the crime, even though the testifying expert did not perform the underlying testing herself. (*Id.* at 138–61.) The Court is not persuaded.

---

[9] The "N.A.D.A. Recreational Vehicle Appraiser's Guide" is an authority used in the valuation of automobiles. *See, e.g.*, *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 758 (6th Cir. 2008).

"The Sixth Amendment's Confrontation Clause provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." *Orlando v. Nassau Cty. Dist. Att'ys Office*, 915 F.3d 113, 121 (2d Cir. 2019) (quotation, brackets, and ellipsis omitted). "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination." *United States v. Jass*, 569 F.3d 47 (2d Cir. 2009) (quotation omitted). "To implicate the Confrontation Clause, the statement must be used to prove the truth of the matter asserted, and the statement must be 'testimonial.'" *Orlando*, 915 F.3d at 121 (quoting *Davis v. Washington*, 547 U.S. 813, 821–22 (2006)). Typically, evidence is testimonial if it constitutes "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (quotation and brackets omitted).

The circumstances under which the DNA report was introduced at trial were as follows. A supervising criminalist named Britton Morin from the Office of the Chief Medical Examiner testified that she reviewed the DNA profiles of two specimens—one from the umbrella the police recovered in a car at the scene and one from a buccal swab from Petitioner—and concluded that the DNA profiles were a match. (R. at 1499–1521.) During cross examination, Ms. Morin testified that although she did not perform the hands-on testing, she did "receive all the results at the end, and . . . the conclusions to those results are mine." (*Id.* at 1521–22.)

The Court concludes that *Williams v. Illinois*, 567 U.S. 50 (2012), furnishes a plausible basis on which the state court could have reasonably concluded that the admission of the challenged DNA report did not violate Petitioner's Sixth Amendment rights. In *Williams*, the Supreme Court reasoned:

Petitioner's main argument is that the expert went astray when she referred to the DNA profile provided by Cellmark [an outside laboratory] as having been produced from semen found on the victim's vaginal swabs. But both the Illinois Appellate Court and the Illinois Supreme Court found that this statement was not admitted for the truth of the matter asserted, and it is settled that the Confrontation Clause does not bar admission of such statements. For more than 200 years, the law of evidence has permitted the sort of testimony that was given by the expert in this case. Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true. It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert. While it was once the practice for an expert who based an opinion on assumed facts to testify in the form of an answer to a hypothetical question, modern practice does not demand this formality and, in appropriate cases, permits an expert to explain the facts on which his or her opinion is based without testifying to the truth of those facts. That is precisely what occurred in this case, and we should not lightly sweep away an accepted rule governing the admission of scientific evidence.

We now conclude that this form of expert testimony does not violate the Confrontation Clause because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted. When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. *Out-of-court statements that are related by the expert solely for the purposes of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause.* Applying this rule to the present case, we conclude the expert's testimony did not violate the Sixth Amendment.

As a second, independent basis for our decision, we also conclude that *even if the report produced by Cellmark had been admitted into evidence, there would have been no Confrontation Clause violation.* The Cellmark report is very different from the sort of extrajudicial statements, such as affidavits, depositions, prior testimony, and confessions, that the Confrontation Clause was originally understood to reach. The report was produced before any suspect was identified. The report was sought not for the purpose of obtaining evidence to be used against petitioner, who was not even under suspicion at the time, but for the purpose of finding a rapist who was on the loose.

*Id.* at 57–58 (citations and quotation omitted; emphases added).[10]

---

[10] It is unclear from the trial transcript whether the DNA report was prepared before or after Petitioner was identified as a suspect for the crimes charged. (*See* R. at 1509–10.) As the Court must view the evidence in the light most favorable to the prosecution, the Court interprets the trial record as establishing that the DNA report was prepared before Petitioner became a suspect. *See*

The Court concludes that it would not have been unreasonable for the state court to conclude, at a minimum, that the DNA report was admitted to explain the reasoning of the testifying expert, and not for its truth.[11]  The Court need not decide whether this interpretation of

---

*Quartararo v. Hanslmaier*, 186 F.3d 91, 96 (2d Cir. 1999) (noting that "in this habeas proceeding all the evidence must be viewed in the light most favorable to the prosecution").

[11] Though unnecessary to the Court's ruling, the Court observes that the Second Department could have concluded—*not unreasonably*—that even if the DNA report *had been* admitted for the primary purpose of establishing Petitioner's guilt, Petitioner would nevertheless fail to demonstrate a Confrontation Clause violation.  In *Washington v. Griffin*, 876 F.3d 395 (2d Cir. 2017), the Second Circuit rejected the argument that that the Supreme Court had articulated a "clearly established" rule that "formalized out-of-court statements made by forensic analysts that have the primary purpose of building a case against a targeted individual are testimonial, and so subject to the Confrontation Clause."  *Id.* at 408 (quotation omitted).  Specifically, the Second Circuit reasoned:

> The Supreme Court has unequivocally stated that a principle is "clearly established" for the purposes of [28 U.S.C.] § 2254(d)(1) "only when it is embodied in a [Supreme Court] *holding*."  [*Thaler v.*] *Haynes*, 559 U.S. [43,] 47 [(2010)] (emphasis added).  We have already noted the difficulty in identifying a single holding of principle from the several opinions of the fractured *Williams* Court, using the analytic approach the Supreme Court recommends.  *See* [*United States v.*] *James*, 712 F.3d [79,] 85 (citing *Marks v. United States*, 430 U.S. 188, 193 [1977])); *see also Williams*, [567 U.S. at 141] (Kagan, *J.*, dissenting) (noting that *Williams* leaves "significant confusion in [its] wake," making apparent that *Melendez-Diaz* [*v. Massachusetts*, 557 U.S. 305 (2009)] and *Bullcoming* [*v. New Mexico*, 564 U.S. 647 (2011)] "no longer mean all that they say" without clarifying "in what way or to what extent they are altered").  Indeed, the supposedly clear rule that [the petitioner] discerns in *Williams* runs counter to the opinion of a majority of Justices there: thus, both Justice Thomas in his concurrence and Justice Kagan in her dissent specifically reject the proposition that Confrontation Clause protections should be limited to circumstances in which a suspect has been identified, *see* [*Williams*, 567 U.S. at 114] (Thomas, *J.*, concurring in the judgment) (rejecting the "targeted individual" theory of Confrontation Clause protections as "lack[ing] any grounding in constitutional text, in history, or in logic"); *id.* at [135–36] (rejecting the theory as insufficiently addressing reliability concerns), and Justice Thomas alone subscribes to the view that the Clause reaches only formalized materials.  It is therefore difficult to see how [the petitioner's] purported rule could be "clearly established Federal law" for the purposes of § 2254(d)(1)."

*Washington*, 876 F.3d at 409 (2d Cir. 2017).

Supreme Court precedent is correct, only that it is not unreasonable, which the Court finds.  *See Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (distinguishing "an *unreasonable* application of federal law," which warrants *habeas* relief where a state court has adjudicated an issue on the merits, with "an *incorrect* application of federal law," which does not); *Henry v. Poole*, 409 F.3d 48, 68 (2d Cir. 2005) ("A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." (quotation and brackets omitted)).

### B.     NADA Guide

The Court now turns to Petitioner's second Confrontation Clause argument—that the trial court's decision to permit the prosecution's expert to testify using the NADA Guide violated Petitioner's rights under Confrontation Clause.  (Pet. at 232–33.)  At trial, an expert named Bernard Lewis testified about the value of vehicles while using as an aid the NADA Guide.  Mr. Lewis explained that the NADA Guide was "commonly used by automobile dealers along the eastern seaboard[,]. . . . [and that] [i]n order to determine the value of a car we have to really look at books, and this is one of them that we use."  (R. at 1464.)  Petitioner has cited no persuasive authority,[12] nor is the Court aware of any authority, supporting the contention that Mr. Lewis's reliance on the NADA Guide violated the Confrontation Clause.  Indeed, Rule 803 of the Federal Rules of

_____

[12] Petitioner does not cite a single Supreme Court case; all he cites is one state court decision, *People v. Butler*, 507 N.Y.S.2d 477 (N.Y. App. Div. 1986), in which the Second Department held that the "People have failed to meet their burden of proof on" the issue of the value of property where the "only evidence of the actual value of the subject cables was the testimony of People's witnesses . . . who testified that the value of the cables as set forth by the 'engineering group' was $7,000."  *Id.* at 877.  (*See* Pet. at 232–34.)  As explained, *supra*, "a federal court is not bound by a state court's analysis of federal law."  *Smith*, 2013 WL 1800207, at *1.

Evidence specifically carves out a hearsay exception for "statement[s] contained in a treatise, periodical, or pamphlet, if . . . the statement is relied on by [an] expert on direct examination; and . . . the publication is established as a reliable authority by the expert's admission or testimony . . . or by judicial notice." Fed. R. Evid. 803(18).[13]  Mr. Lewis, who was admitted as an expert on the valuation of automobiles, established the reliability of the NADA Guide when he testified that it was "commonly used by automobile dealers along the eastern seaboard" to determine the value of a car, and that "books," like the NADA Guide, were necessary for that purpose.  (R. at 1464.)

* * *

Accordingly, the Second Department's rejection of Petitioner's Confrontation Clause challenges both as to the DNA report and the NADA Guide was not an unreasonable application of clearly established Federal law or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Petitioner is not entitled to *habeas* relief on this ground.

## VI.    Evidentiary Rulings

Petitioner argues that the state trial court misapplied state law as to several evidentiary rulings.  (Pet. at 162–81.)  Because the Second Department rejected this claim on the merits, *Marino*, 23 N.Y.S.3d at 350, that court's decision is entitled to AEDPA deference.  *See* § 2254(d); *Eze*, 321 F.3d at 121.

---

[13] Federal Rule of Evidence 702 permits an expert to give an opinion if it, *inter alia*, is the "product of reliable principles and methods" and "the expert has reliably applied the principles and methods to the facts of the case."  Consistent with Rule 803(18), Federal Rule of Evidence 703 permits an expert to base his or her opinion on otherwise inadmissible facts or data, so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject[.]"

Generally, arguments that the trial court misapplied state law are not cognizable on federal *habeas* review. *See DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004) ("State courts are the ultimate expositors of state law; it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions." (quotations and citations omitted)); *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) ("[N]ot every error of state law can be transmogrified by artful argumentation into a constitutional violation." (quotation omitted)); *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001) ("The state court ruling . . . is an interpretation of state law that we will not review."). However, "[a] federal habeas court may . . . review an error of state evidentiary law to assess whether the error deprived the petitioner of his due process right to a fundamentally fair trial." *Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012) (quotation omitted).

Petitioner challenges one of the trial court's evidentiary rulings as violative of the New York state *Rosario* rule (Pet. at 162), under which a criminal defendant is entitled "to inspect the prior statements of a prosecution witness, prior to cross-examination, whether or not his statements vary from his testimony on the stand.'" *Flores v. Demskie*, 215 F.3d 293, 300 (2d Cir. 2000) (quoting *People v. Rosario*, 173 N.E.2d 881, 882–83 (N.Y. 1961)). But "Petitioner's claim regarding the alleged violation of the Rosario rule by the state court does not present a question cognizable by this Court on habeas review." *Johnson v. Filion*, 232 F. Supp. 2d 98, 100 (S.D.N.Y. 2002) (quotation omitted); *see Morrison v. McClellan*, 903 F. Supp. 428, 429 (E.D.N.Y. 1995) ("Any error under *Rosario* at trial would be a violation of state law, and, thus, not subject to review under a petition for a writ of habeas corpus.").

Similarly unavailing is Petitioner's argument that the trial court abused its discretion under *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974) (Pet. at 176), in which the New York Court of Appeals established a process for criminal defendants to obtain an advanced ruling on the scope

of a prosecutor's cross examination regarding "prior specific criminal, vicious or immoral conduct" should the defendant decide to testify. *Sandoval*, 314 N.E.2d at 416. As courts in this Circuit have held, "a claim that the trial court erred in its *Sandoval* ruling brings up a matter of state law and [is] not subject to habeas review unless the petitioner can show that the erroneous evidentiary ruling was so pervasive as to have denied him a fundamentally fair trial, or so extremely unfair that its admission violates fundamental conceptions of justice." *Lewis v. New York*, No. 14-CV-03906, 2017 WL 5591624, at *8 (E.D.N.Y. Nov. 17, 2017) (quotation omitted). In Petitioner's criminal trial, the court ruled that the prosecutor could cross examine Petitioner, should he testify, about the underlying facts of a prior burglary conviction. (R. at 649, 872). Petitioner argues that the ruling prevented him from testifying in his own defense. (Pet. at 176–81.)

The Court notes that Petitioner *did* in fact testify in his own defense (R. at 1530–46), and so the Court is therefore perplexed by Petitioner's argument that the trial court's *Sandoval* ruling prevented him from testifying.[14] In any event, the Court rejects any argument based on *Sandoval*. Although the prosecutor did question Petitioner about his prior burglary conviction on cross examination (R. at 1576), the significant evidence presented at trial supporting Petitioner's convictions impels the Court to conclude that any error the trial court made in its evidentiary decision under *Sandoval* did not influence the jury verdict. *See Senor v. Greiner*, No. 00-CV-

---

[14] Had Petitioner elected to not testify, his *Sandoval* argument would be incognizable on *habeas* review. "Second Circuit law has created a bright-line rule barring habeas relief for allegedly erroneous *Sandoval* rulings in instances where a defendant elects not to testify." *Melendez v. LaValley*, 942 F. Supp. 2d 419, 424 (S.D.N.Y. 2013) (quotation, ellipsis, and brackets omitted); *see Andrews v. LeClaire*, 709 F. Supp. 2d 269, 278 (S.D.N.Y. 2010) ("Because Petitioner did not testify at trial, his habeas claim regarding the *Sandoval* issue must be dismissed."); *Butler v. Graham*, No. 07-CV-6586, 2008 WL 2388740, at *2 (S.D.N.Y. June 12, 2008) ("[W]here, as here, a defendant has not testified, a reviewing habeas court has no way effectively to evaluate a *Sandoval* ruling.").

5673, 2002 WL 31102612, at *13 (E.D.N.Y. Sept. 18, 2002) ("Even assuming the trial court erroneously permitted the prosecutor to question [Petitioner] about his prior [] conviction, [the petitioner] has not demonstrated that the ruling influenced the jury's verdict in any way. The prosecution presented abundant evidence at trial pointing to petitioner's guilt.")

Accordingly, *habeas* relief on the basis of the trial court's allegedly erroneous evidentiary rulings under state law is denied.

## VII. Joinder of Charges

Petitioner argues that the trial court improperly joined all of the charges against him in one trial. (Pet. at 219–31.) Because the Second Department rejected this claim on the merits, *Marino*, 23 N.Y.S.3d at 350, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121.

The Court holds that the Second Department's rejection of this claim was not an unreasonable application of Supreme Court precedent.[15] Under the Federal Rules of Criminal Procedure, "[t]he court may order that separate cases be tried together as though brought in a single indictment or information if" all of the offenses are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Civ. P. 8(a), 13. Petitioner argues that "[t]he prosecution's burden of proof was irredeemably detracted by the consolidation of these cases depriving [Petitioner] of a fair trial." (Pet. at 219.) Petitioner's objection stems from several statements the prosecutor made during

---

[15] As with his other claims, Petitioner fails to identify a single Supreme Court decision in support of his contention that the consolidation of charges into a single trial suffices to establish a constitutional violation.

summation that appeared to instruct the jury to infer facts proven for the sake of one charge in determining whether the prosecution had met its burden on another charge. (*Id.* at 220–22.)

Given the dearth of Supreme Court authority suggesting otherwise, the Court holds that any risk of cumulative evaluation that arose as a result of the joinder of charges was mitigated by the jury instruction given by the trial court. *See Oliveira v. Phillips*, No. 05-CV-564, 2007 WL 2890211, at *9 (S.D.N.Y. Sept. 28, 2007) (finding no constitutional error where "trial court instructed the jury not to intermingle the evidence pertaining to the separate charges but rather assess the evidence pertaining to each charge separately"). At trial, the court provided the following instruction to the jury:

> Ladies and gentlemen, for certain reasons the People presented evidence of three distinct incidents[. Nonetheless,] you must consider all the charges separately and consider each incident separately. Therefore, you may not use the evidence of one or more of any particular incident as proof that the defendant committed the crimes charged in another incident. Thus, even if you are convinced beyond a reasonable doubt of the defendant's guilt of the crimes charged in one or two of the incidents[,] you may not use your determination as proof that the defendant committed any or all of the charged crimes concerning another incident. I therefore reiterate, ladies and gentlemen, that you must find the defendant guilty of crimes in each incident beyond a reasonable doubt based upon that incident. You are permitted, however, to consider the defendant's conduct and/or statements with respect to any individual incident or all of the incidents to determine the defendant's intent as to each incident.

(R. at 1593–94.)

As the Second Circuit has held, "jurors are presumed to follow instructions." *United States v. Stewart*, 433 F.2d 273, 307 (2d Cir. 2006). Because Petitioner "offers no reason to believe that the jury did not follow this instruction," he "has not shown that the alleged 'spillover' effect caused by the joinder, if any, rose to the level of a constitutional violation which would warrant habeas relief." *Oliveira*, 2007 WL 2890211, at *9.

## VIII.  Right to Fair Trial

Petitioner argues that the prosecutor's cross examination of Petitioner as well as the prosecutor's remarks in summation violated Petitioner's right to a fair trial.  (Pet. at 182–85, 202–18, 261–68).  Because the Second Department adjudicated this claim on the merits, *Marino*, 23 N.Y.S.3d at 350, AEDPA deference applies.  *See* § 2241(d); *Eze*, 321 F.3d at 121.

Specifically, Petitioner contends that his trial was constitutionally defective as a result of the following: (1) Police Officer Gridley was permitted, over objection, to refer on the stand to a statement allegedly made by Petitioner that had been suppressed (Pet. at 182–85); (2) the prosecution questioned Petitioner at trial regarding statements he made to his previous lawyer at arraignment (*id.* at 202–18); and (3) the prosecutor engaged in other improper and prejudicial questioning of Petitioner and made improper and prejudicial statements in summation (*id.* at 261–68).

> Under relevant federal precedent,
>
> it is not enough that the prosecutors' remarks were undesirable or even universally condemned.  The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.  Moreover, the appropriate standard of review for such a claim on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotations and citations omitted).

With this standard in mind, the Court concludes that *habeas* relief is not warranted on the basis of any of Petitioner's contentions regarding his right-to-fair-trial claim.  The trial judge ruled that Officer Gridley could not testify that Petitioner said that he may have left his pills in the car he "broke into."  (R. at 1008.)  Petitioner argues that this ruling was violated when Officer Gridley testified as follows on the stand about Petitioner's August 23, 2011 arrest:

> Basically, I asked [Petitioner] if he had anything else on him. He said, [m]aybe my pills. I said, I searched you. I didn't find any pills. I'll look in the car after I put you in the cell. He said, [h]ow did you get the car back here so fast, something to that effect. I said, [y]ou were in it. You were in the car when we brought it back. He said, [n]o not that car."

(*Id.* at 1404–05.) According to Petitioner, the prejudicial effect of this error was exacerbated in closing, when the prosecutor stated:

> But, if you remember, when [Petitioner] was arrested he went back to the precinct in that case and he had his back and forth with Police Officer Gridley, and Officer Gridley said, do you have anything on you that I need to know about? And the defendant said, well, maybe my pills. And Officer Gridley said, you don't have any pills on you. The defendant said, maybe they're in the car. Gridley says, I'll check the car after I put you in the cell. He says, the defendant, how did you get the car back here so fast. And Gridley says, you were in it. And the judge clarified that he was talking about the police car. And what does the defendant say? The defendant says, not that car. Well, what car is he talking about? What car is he talking about? That's for you to decide. But I submit to you the only car he could be talking about is the car that he broke into only hours before."

(*Id.* at 1610.)

Regarding Police Officer Gridley's reference to Petitioner's suppressed statements—to the effect that Petitioner stated he may have left his pills in the car he broke into hours earlier—the Second Department's rejection of this claim was not an unreasonable application of federal law.[16] Although the prosecution's handling of this issue—both with respect to its questioning of Officer Gridley and its summation—was not ideal, Petitioner has not shown how the admission of

---

[16] Again, Petitioner fails to cite any relevant Supreme Court precedent or federal law on this issue. (Pet. at 182–85.) This alone would justify denial of his federal *habeas* claim. *See Roberts v. Smith*, No. 10-CV-4264, 2010 WL 5288198, at *4 (E.D.N.Y. Dec. 14, 2010) (denying *habeas* petition where *pro se* petitioner "did not cite a single Supreme Court case or even any case dealing with constitutional issues in his argument to the Appellate Division, and not surprisingly, he cites none here"). With respect to his arguments about the prosecution asking him about statements he made to his attorney and the prosecution's other questioning and summation, Petitioner similarly "fails to provide the Court with a Supreme Court decision that prohibits" the precise solicitation of information challenged. *House*, 2003 WL 23198788, at *17. (Pet. at 202–18, 226–28.)

testimony about his suppressed statements "infected the trial with unfairness as to make the resulting conviction a denial of due process[,]" given the overwhelming evidence supporting Petitioner's guilt on the charges stemming from his August 23, 2011 arrest. *Darden*, 477 U.S. at 181. Here, Officer Gridley plainly did not refer to the inculpatory portion of the statement that the trial judge suppressed, and the prosecutor's argument in summation that the jury draw an inference from Officer Gridley's testimony that was unfavorable to Petitioner did not amount to a due process violation. *See United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (recognizing that the prosecution "may be passionate in arguing that the evidence supports a conviction").

As for Petitioner's argument that the prosecution questioned him about statements he made to his previous lawyer at arraignment, Petitioner fails to demonstrate that any of the allegedly privileged information elicited from Petitioner rendered his criminal trial unfair to a degree that violated due process. On cross examination, the prosecutor asked Petitioner: "When you were arraigned in court on this case, isn't it true that your counselor on your behalf in open court in public stated that you got the keys to that car from a Joseph Abandolo?" (R. at 1557.) Defense counsel then objected, the Court sustained the objection, and the prosecutor withdrew the question. (*Id.* at 1558.) Assuming, *arguendo*, that this question was intended to coax Petitioner into disclosing confidential communications he engaged in with his attorney, Petitioner never answered the question. *See* 3 Orfield's Criminal Procedure Under the Federal Rules § 26:314 ("Error in the asking of a question may be cured if the question is withdrawn before it is answered, . . . ."). Furthermore, the prosecutor's question did not even seek to elicit privileged information, in that it sought only to have Petitioner testify to what his lawyer said in open court.[17] *See United States v.*

---

[17] Indeed, it is likely that the trial court precluded the lawyer's statement in court from coming in on hearsay grounds, not because it violated Petitioner's attorney-client privilege.

*Ghavami*, 882 F. Supp. 2d 532, 537 (S.D.N.Y. 2012) ("It is well-established that voluntary disclosure of confidential material to a third party generally results in forfeiture of any applicable attorney-client privilege.").

In sum, Petitioner has not shown that "he suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." *Cabezudo v. Fischer*, No. 05-CV-3168, 2009 WL 4723743, at *9 (E.D.N.Y. Dec. 1, 2009) (quotation omitted). Indeed, "Petitioner fails to cite, and [the Court is] unaware of, any Supreme Court precedent that would dictate, or even strongly suggest" that the challenged statements rise to the level of severity and impact to warrant *habeas* relief. *Memminger v. People of N.Y.*, No. 05-CV-471, 2009 WL 3150766, at *10 (S.D.N.Y. Sept. 30, 2009).

## IX. Jury Instructions

Petitioner next argues that the trial court's rejection of his proposed jury instructions violated state law. (Pet. at 236–60; 269–83.) Because the Second Department decided this issue on the merits, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121. "'In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law.'" *Smith v. Herbert*, 275 F. Supp. 2d 361, 369 (E.D.N.Y. 2003) (quoting *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985)).

First, Petitioner argues that the trial court's jury charge on endangering the welfare of a child was confusing and misleading, and thus in violation of due process, because the court charged the jury that "[k]nowledge of the age of the child is not an element of this crime and is not a defense to this charge," but then charged the jury that another element was that the child-victim "was less

than 17 years old." (Pet. at 236.) The Court finds this instruction neither confusing nor misleading. It is clear that the instruction conveyed that while the prosecution was not required to prove that Petitioner *knew* the child victim was under 17-years-old, the prosecution did have to prove that the child-victim was *in fact* under 17-years-old. Indeed, the child endangerment crime with which Petitioner was charged did not require proof that Petitioner knew the child's age, only that the child was younger than 17 years of age. *See* N.Y. Penal Law § 260.10. Thus, there was no error with respect to this instruction and Petitioner's due process rights were not violated by it. *See Russo v. Zon*, No. 05-CV-0293, 2009 WL 3614527, at *12 (W.D.N.Y. Oct. 26, 2009) ("To be entitled to federal habeas relief, a petitioner must show not merely that a particular jury instruction is 'undesirable, erroneous, or even universally condemned,' but also that it violated some right that was guaranteed to him by the federal constitution." (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).

Second, Petitioner argues that the trial court's instruction to the jury to not "consider or speculate on matters concerning the possible sentence or punishment the defendant may face if convicted if there is a verdict of guilty [because] it will be [the trial court's] responsibility to impose an appropriate sentence" amounted to a violation of Petitioner's right to a fair trial. (Pet. at 269.) According to Petitioner, this instruction conveyed to the jury that a guilty verdict should be forthcoming. (*Id.*) Petitioner additionally objects to the jury instructions waffling between the words "may" and "must" and the instructions' failure to define certain common terms like "temporary" and "permanently." (*See* Pet. at 270–72.) Even if these instructions were "undesirable, erroneous, or . . . universally condemned," Petitioner has utterly failed to demonstrate that these alleged errors resulted in violations of his due process rights. *See Russo*, 2009 WL 3614527, at *12 (quotation omitted).

## X.  Excessiveness of Sentence

Finally, Petitioner argues that his imposed sentence of nine to 18 years' imprisonment was constitutionally excessive.  (Pet. at 38–41.)  Because the Second Department decided this issue on the merits, that court's decision is entitled to AEDPA deference.  *See* § 2254(d); *Eze*, 321 F.3d at 121.  All of the arguments Petitioner makes are based on state law, rendering them irrelevant on *habeas* review.  Indeed, because Petitioner's sentence was within the range prescribed by state law, no federal *habeas* relief may be granted.  *White v. Keane*, 969 F.2d 1381, 1384 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.").

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpu*s pursuant to 28 U.S.C. § 2254 is denied.  Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (quotations and ellipsis omitted)).  Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

_/s/ Pamela K. Chen_____
                                                  Pamela K. Chen
                                                  United States District Judge

Dated:  March 15, 2019
        Brooklyn, New York